# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| INFOBILLING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. SA-12-CV-01116-DAE |
| | ) | |
| TRANSACTION CLEARING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; (2) REFERRING PARTIES TO MAGISTRATE JUDGE FOR RULE 16 SCHEDULING CONFERENCE

On April 8, 2013, the Court heard Defendant Transaction Clearing, LLC's Motion to Dismiss. Charlie R. Alden, Esq., and Isabelle M. Antongiorgi, Esq., appeared on behalf of Plaintiff InfoBilling, Inc. ("Plaintiff"); Byron L. LeFlore, Jr., Esq., appeared on behalf of Defendant Transaction Clearing, LLC ("Defendant"). After reviewing the motion and the supporting and opposing memoranda, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss (doc. # 7). The Court **REFERS** the parties to the Magistrate Judge for a Rule 16 Scheduling Conference in order to set appropriate parameters on discovery.

1

BACKGROUND

From 2009 through 2011, Plaintiff ran a business that provided voicemail and 1-800 services to landline telephone users. ("Compl." doc. # 1 ¶ 11.) Defendant is a billing aggregator, or clearinghouse, that acts as a "middleman" between third-party service providers and major telephone companies. (Id.) On October 22, 2007, Plaintiff entered into a contract with Defendant for billing support services. (Id. Ex. 2.) Pursuant to that agreement, Defendant submitted charges for Plaintiff's third-party services to telephone companies, and the telephone companies in turn added those charges onto the bills of their clients. (Id. ¶ 12.) The telephone companies then transmitted the money received from the third-party services to Defendant, who then remitted the revenue—after taking certain authorized deductions—to Plaintiff. (Id.)

Around June 2009, Plaintiff began to suspect that Defendant was making excessive, improper deductions. (Id. ¶ 16; doc. # 8 at 4.) It asked Defendant to provide supporting documents from the telephone companies showing the amount of revenue generated by Plaintiff's third-party services ("PAR Statements"), but Defendant refused to comply with this request. (Compl. ¶ 17.) Pursuant to the parties' contract, Plaintiff pursued two forms of alternative dispute resolution—"Internal Escalation" and mediation—to settle the dispute. (Doc. # 8

at 4.)  After exhausting those remedies, the parties entered into binding arbitration in November 2011, which was held in San Antonio, Texas, as <u>InfoBilling, Inc. v. Transaction Clearing, LLC</u>, American Arbitration Association Case No. 70 Y 1030101410.  (<u>Id.</u>; <u>see</u> Compl. ¶¶ 17–19.)

The parties selected three arbitrators from a list provided by the American Arbitration Association: Judge Pat Boone and attorneys Manuel A. Pelaez-Prada and John C. Fleming (the "Panel").  (Compl. ¶ 19.)  In his disclosure papers, Judge Boone indicated that he knew Mr. LeFlore "professionally," but had not seen him in several years.  (<u>Id.</u> Ex. 3 at 4.)  He also indicated that he may have presided over some of Mr. LeFlore's cases during his tenure as a state district court judge in San Antonio, but that he had "no specific recollection" of any such cases.  (<u>Id.</u>)

On September 4, 2012, the Panel issued its arbitration award, finding in favor of Defendant.  (Compl. Ex. 1.)  According to Plaintiff, the Panel allowed Defendant to "ignore" the parties' stipulated discovery orders to produce the documents necessary to prove its case, including the PAR documents, and the Panel improperly disregarded the conclusions of Plaintiff's expert, a Certified Fraud Examiner.  (Doc. # 8 at 5.)  "Due to perceived bias of the arbitration panel," Defendant investigated the relationship between Judge Boone and Mr. LeFlore.

(Id.)

On November 29, 2012, Plaintiff filed the instant petition seeking to vacate the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 10, and the Texas Arbitration Act, Tex. Civ. Prac. & Rem. Code § 177.088(a).  On December 19, 2012, Defendant filed a motion to Dismiss and Request to Confirm Arbitration Award.  (Doc. # 7.)  On January 7, 2013, Plaintiff filed a response.  (Doc. # 8.)  On January 14, 2013, Defendant filed a reply.  (Doc. # 10.)

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. 544, 555–56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

## DISCUSSION

Plaintiff asserts that it is entitled to relief under the Federal Arbitration Act and Texas Arbitration Act, citing two grounds for vacating the arbitration

award: (1) "there was evident partiality or corruption in the arbitrators"; and (2) the arbitrators were "guilty of misconduct in failing to hear evidence pertinent and material to the controversy." (See Compl. ¶ 41.)  For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss and therefore denies Defendant's request to affirm the arbitration award.

I.    Claims under the FAA

The Federal Arbitration Act ("FAA") imposes significant limits on judicial review of arbitration awards in order that arbitration be "efficient and cost-effective" for the parties. Positive Software Solutions, Inc. v. New Century Mortg. Corp., 476 F.3d 278, 280 (5th Cir. 2007) (en banc).  An arbitration award must be confirmed unless the court determines the award should be vacated under § 10 of the FAA or modified under § 11. Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008).  Pursuant to § 10(a) of the FAA, there are only four grounds upon which a court can vacate an arbitration award:

> (1) [W]here the award was procured by corruption, fraud, or undue means;
>
> (2) [W]here there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) [W]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

>   (4) [W]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In the instant case, though not explicitly stated in the Complaint, Plaintiff appears to invoke § 10(a)(2) and § 10(a)(3) of the FAA as a basis for vacating the arbitration award.

    A.    <u>Evident Partiality</u>

Section 10(a)(2) of the FAA provides for vacatur on the grounds of "evident partiality."  9 U.S.C. § 10(a)(2).  The Fifth Circuit has held that a neutral arbitrator exhibits evident partiality if the arbitrator does not disclose facts which might create a "reasonable impression of bias."[1]  See <u>Positive Software</u>, 476 F.3d at 283.  In explaining this standard, the court emphasized that it is a "stern standard," <u>id.</u> at 281, and that "nondisclosure alone does not require vacatur of an arbitral award for evident partiality," <u>id.</u> at 282.  Rather, "[a]n arbitrator's failure to disclose must involve a significant compromising connection to the parties," <u>id.</u> at 282–83, and "create[] a concrete, not speculative impression of bias," <u>id.</u> at 286.  The Fifth Circuit further explained that "an award may not be vacated because of a

---

[1] In adopting this standard, the Fifth Circuit analyzed <u>Commonwealth Coatings Corp. v. Continental Cas. Co.</u>, 393 U.S. 145 (1968) and found Justice White's concurring opinion to be controlling, rather than Justice Black's opinion for the Court.  See <u>Positive Software Solutions</u>, 476 F.3d at 281–83.

trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding." Id. at 283.  Moreover, an arbitrator is not required to provide a "complete and unexpurgated business biography."  See id. at 282, 285 (quoting Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 151 (1968).

In the instant case, Plaintiff identifies several undisclosed facts that it argues demonstrate "evident partiality" by the Panel.  Most of these facts relate to an allegedly "substantial" conflict of interest on the part of Judge Boone.  (See Compl. ¶ 41.)  First, Plaintiff alleges partiality can be inferred from the fact that Mr. DeFlore and Judge Boone have offices in the same ten-story building and did not disclose this fact to Plaintiff.  However, the Complaint states that Plaintiff's counsel first discovered this fact at the arbitration hearing, yet counsel never objected to the composition of the Panel on this basis during the pendency of the arbitration proceeding.  (See Compl. ¶ 22.)  A party seeking to vacate an arbitration award based on an arbitrator's evident partiality generally must object during the arbitration proceedings; "its failure to do so results in waiver of its right to object." Dealer Computer Servs., Inc. v. Michael Motor Co., Inc., 485 F. App'x 724, 727 (5th Cir. 2012) (citing Bernstein Seawell & Kove v. Bosarge, 813 F.2d 726, 732 (5th Cir. 1987)).  Thus, Plaintiff has waived the right to seek to vacate the arbitration award on this basis.  Moreover, the Court fails to see the relevance of

the fact that the two men have offices in the same building.  Even if they saw each other in the elevator daily, this would not plausibly create any "reasonable impression of bias" or the type of substantial relationship necessary to meet the high standard of "evident partiality."

Second, Defendant argues that Judge Boone failed to disclose that Mr. LeFlore personally contributed to his reelection campaign and that this omission evinces evident partiality.  According to the Complaint, Mr. LeFlore gave $100 to Judge Boone's reelection campaign in 2003, nearly ten years prior to the Panel's issuance of the arbitration award.  (See Compl. Ex. 4.)  However, the amount contributed is so small as to be trivial and, coupled with the fact that this contribution took place in the distant past, does not demonstrate the type of substantial relationship required for a showing of "evident partiality."  Taking Plaintiff's argument to its logical conclusion, no individual who ran for public office could preside over an arbitration impartially unless that person first disclosed every campaign contribution he or she ever received—irrespective of the amount or date given—from any person associated with the law firms or parties appearing before him or her.  This would be a heavy burden indeed.[2]  The Third

---

[2] Texas courts have declined to extend a similar burden to sitting judges. Under Texas law, a judge's acceptance of campaign contributions from lawyers or persons related to parties to litigation does not by itself create bias necessitating

Circuit recently considered and rejected Plaintiff's very argument, reasoning that "campaign contributions are a way of life in many state judicial systems." Freeman v. Pittsburgh Glass Works, LLC, —F.3d—, 2013 WL 811884, at *12 (3d Cir. 2013). It determined that "to conclude that an arbitrator demonstrates evident partiality simply based on non-disclosure of publicly recorded and relatively small political campaign contributions would impose too great a burden on the [arbitration] system." Id. (citation omitted) (internal quotation marks omitted). This Court agrees with the reasoning of the Third Circuit. Thus, based on the facts alleged, Judge Boone's failure to disclose Mr. LeFlore's campaign contribution fails to state a claim under the FAA for "evident partiality."

      Third, Plaintiff alleges that Mr. LeFlore serves as treasurer for the Commission for Judicial Reform Political Action Committee (the "PAC") which donates regularly to the Bexar County Republican Party, which in turn made donations to Judge Boone's reelection campaigns. (Compl. ¶ 21.) According to the Complaint, the Republican Party of Bexar County donated $209.25 to Judge Boone's last reelection campaign in 2003, and Mr. LeFlore donated $9,000 to the

---

recusal, or even an appearance of impropriety. Aguilar v. Anderson, 855 S.W.2d 799 (Tex. App. 1993); see J-IV Investments v. David Lynn Mach., Inc., 784 S.W.2d 106, 107–108 (Tex. App. 1990) (finding that a judge's failure to disclose the campaign contribution of a party appearing before him did not provide a basis for retroactive recusal).

Bexar County Republican Party in 2006.[3]  (Id. Ex. 4.)  That Mr. LeFlore served on a PAC which gave general donations to the Bexar County Republican Party, which in turn later chose to donate to Judge Boone's reelection campaign, does not establish any conflict of interest or significant relationship between Judge Boone and Mr. LeFlore.  However, Plaintiff argues that he learned from another lawyer that Mr. LeFlore may have been present at numerous fundraisers for Republican Judges put on by the Bexar County Republican Party and sponsored by the PAC.  (Doc. # 8 at 6.)  Plaintiff urges that discovery is needed to determine the nature of Judge Boone and Mr. LeFlore's relationship—namely, whether Judge Boone was aware of Mr. LeFlore's role in the PAC, whether they saw each other frequently at fundraisers, and the nature of his involvement with Judge Boone's reelection campaigns, if any.  If Judge Boone has significant political ties with Mr. LeFlore, these could potentially create a "reasonable impression of bias" and thus constitute grounds for a finding of evident partiality.  The evident partiality standard necessarily entails a "fact intensive inquiry," see Lifecare Int'l, Inc. v. CD Med., Inc., 68 F.3d 429, 435 (11th Cir. 1995), and Plaintiff has plead sufficient facts to warrant at least limited discovery on the nature of the relationship between Mr.

---

[3] Judge Boone retired from the bench in 2005.  (See Compl. Ex. 3.)

LeFlore and Judge Boone.  Thus, the Court finds that Plaintiff has stated a claim for vacatur in this respect.

Plaintiff also alleges that arbitrator Manuel A. Pelaez-Prada told Mr. LeFlore, "See you this weekend," at the arbitration proceeding and argues that there is potentially an undisclosed, significant personal and/or professional relationship between the two men.  (See Compl ¶ 23.)  However, this argument is waived because Plaintiff did not raise any objection on this basis during the pendency of the arbitration proceeding or investigate any further into any potential conflict of interest at that time.  It cannot "now seek to avoid [its] tactical decision to await the decision of the three member panel rather than seek [the arbitrator's] removal."  Dealer Computer Servs., 485 F. App'x at 728 n.4 (quoting Kiernan v. Piper Jaffray Cos., Inc., 137 F.3d 588, 593 (8th Cir.1998)).  As this is the only fact on which Plaintiff bases its allegations of evident partiality on the part of arbitrator Pelaez-Prada, Plaintiff fails to state a claim for relief for vacatur on this ground.

    B.    <u>Arbitrator Misconduct</u>

Under § 10(a)(3) of the FAA, vacatur is permitted "where arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10(a)(3).  In order for misconduct to justify vacatur, there must have been a "fundamental error" that ultimately "deprived [the parties]

of a fair hearing." Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex., 915 F.2d 1017, 1023 (5th Cir. 1990). "The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." Id. (quoting Hoteles Condado Beach v. Union de Tronquistas Local 901, 763 F.2d 34, 39 (1st Cir. 1985)). Arbitrators have broad discretion in making evidentiary rulings, and the Court generally does not review those rulings. Int'l Chem. Workers Union, Local 683C v. Columbian Chems. Co., 331 F.3d 491, 497 (5th Cir. 2003) (citing Amalgamated Meat Cutters & Butcher Workmen v. Neuhoff Bros., 481 F.2d 817, 820 (5th Cir. 1973) (explaining that "the arbitrator has great flexibility and the courts should not review the legal adequacy of his evidentiary rulings")).

In the instant case, Plaintiff brings two charges of misconduct against the Panel. First, it alleges that the Panel allowed Defendant to "ignore" the parties' stipulated discovery orders to produce the documents necessary to prove its case, including the PAR documents. (Doc. # 8 at 5.) In fact, Plaintiff's own complaint explains in detail how the Panel acknowledged and resolved the discovery issues of which it complains. (See Compl. ¶¶ 25–33.) There appears to have been a dispute over the scope of the audit Plaintiff was to conduct of Defendant's business records and, ultimately, after an emergency hearing, the Panel ordered Defendant to

provide a limited range of PAR statements to Plaintiff.  (Id.)  The parties agreed upon a random sampling method whereby Plaintiff would select certain dates and Defendant would provide five PAR statements preceding those dates and five following those dates.  (See Comp. ¶ 32.)  Plaintiff argues that it received less discovery than Defendant had originally agreed to in a stipulated order and that the Panel "provided no explanation as to why they would not enforce their earlier order."  (Id.)  However, even though discovery was more limited in scope than Plaintiff desired, it obtained enough data from the limited audit for its expert to use in his final report.  Even if the Panel's decision to limit the scope of discovery was in error, it cannot be said that Plaintiff was effectively deprived of a fair hearing.  Plaintiff therefore fails to state a claim for vacatur on this ground.

        Second, Plaintiff argues the Panel "ignored" the conclusions of Plaintiff's expert, a Certified Fraud Examiner.  (Doc. # 8 at 5.)  In the arbitration award, the Panel addresses this issue and states that it did not find the testimony of Plaintiff's expert to be credible because he was not an expert in "Local Exchange Carrier" ("LEC") disputes and because his report did not account for LEC abnormalities.  (See Compl. Ex. 1.)  Even if the Panel erred in arriving at this conclusion, such an error did not deprive Plaintiff of a fair hearing.  Thus, Plaintiff

fails to state a claim upon which relief can be granted for arbitrator misconduct under § 10(a)(3) of the FAA.

II.     Claims under the TAA

Judicial review of an arbitration award is extraordinarily narrow under the Texas Arbitration Act ("TAA").  See E. Tex. Salt Water Disposal Co. v. Werline, 307 S.W.3d 267, 271 (Tex. 2010).  The Texas Civil Practice and Remedies Code contains several statutory grounds for vacating an arbitration award.  See Tex. Civ. Prac. & Rem. Code § 171.088.  Pertinent to the instant case, a court must vacate an arbitration award if "the rights of a party were prejudiced by . . . evident partiality by an arbitrator appointed as a neutral arbitrator."  Id. § 171.088(a)(2)(A).  Additionally, vacatur is appropriate where "the arbitrators . . . refused to hear evidence material to the controversy."  Id. § 171.088(a)(3)(C).

There does not appear to be a substantial difference between the legal standards of the TAA and FAA that would alter the Court's analysis as to Plaintiff's claims of "evident partiality" or arguments regarding the exclusion of material evidence in the instant case.  In Burlington N. R.R. Co. v. TUCO, Inc., 960 S.W.2d 629 (Tex. 1997), the Texas Supreme Court held that "a neutral arbitrator . . . exhibits evident partiality . . . if the arbitrator does not disclose facts which might, to an objective observer, create a reasonable impression of the

arbitrator's partiality." Id. at 630 (emphasis added). Although stated slightly differently than the Fifth Circuit's standard in Positive Software, "the same standard for determining evident partiality is applicable whether the arbitration is governed by the FAA or TAA." Amoco D.T. Co. v. Occidental Petroleum Corp., 343 S.W.3d 837, 844 (Tex. App. 2011). Additionally, Texas courts have adopted the federal standard that, in order to vacate an arbitration award based on evidentiary error, the error must be one that is not simply an error of law, but which so affects the rights of a party that it may be said he or she was deprived of a fair hearing. See Babcock & Wilcox Co. v. PMAC, Ltd., 863 S.W.2d 225, 234 (Tex. App. 1993) (citing Forsythe Int'l, 915 F.2d at 1023); Las Palmas Med. Ctr. v. Moore, 349 S.W.3d 57, 73 (Tex. App. 2010). Therefore, because the legal standards are the same under the TAA and the FAA, the Court's analysis remains the same under the TAA and it does not repeat that analysis here.

III.   Nature of Discovery

In sum, Plaintiff has stated a claim for vacatur on the ground of evident partiality under federal and state law solely with respect to its allegations regarding the political and/or personal ties between Mr. LeFlore and Judge Boone, and the Court will permit limited discovery on that matter. As indicated at the hearing on the Motion to Dismiss, the Court refers the parties to the Magistrate

Judge for a Rule 16 Scheduling Conference in order to set appropriate parameters on discovery.  Discovery shall not be used as a "fishing" expedition and shall be limited to determining the nature of the relationship between Judge Boone and Mr. LeFlore.  While depositions of Judge Boone and Mr. LeFlore may be taken, depositions of the other two arbitrators on the Panel may not be taken at this time without further order of the Court.  Plaintiff may seek permission for expanded discovery if initial discovery discloses evidence supporting its claim of evident partiality.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.  (Doc. # 7.)  The Court **REFERS** the parties to the Magistrate Judge for a Rule 16 Scheduling Conference in order to set appropriate parameters on discovery.

IT IS SO ORDERED.

DATED: San Antonio, Texas, April 10, 2013.

_____
David Alan Ezra
Senior United States District Judge